UNITED STATES, Appellee

v.

Mark A. EBY, Aviation Electronics Technician First Class, U.S. Navy, Appellant.

No. 95–1187.
Crim.App. No. 94–0529.

U.S. Court of Appeals for the Armed Forces.

Argued May 8, 1996.

Decided Sept. 5, 1996.

For Appellant: *Major R.K. Stutzel*, USMC (argued).

For Appellee: *Colonel Charles Wm. Dorman*, USMC (argued); *Commander D.H. Myers*, JAGC, USN, *Lieutenant Colonel Frank F. Krider*, USMCR, *Lieutenant Com-*

mander *Eric P. Johnson*, JAGC, USNR (on brief).

## Opinion of the Court

CRAWFORD, Judge:

■ Contrary to his pleas, appellant was convicted at Whidbey Island, Oak Harbor, Washington, of premeditated murder of his wife, in violation of Article 118(1), Uniform Code of Military Justice, 10 USC § 918(1). Appellant was sentenced to dishonorable discharge, confinement for life, total forfeitures, and reduction to the lowest enlisted grade. Acting pursuant to a pretrial agreement that allowed appellant to plead guilty to unpremeditated murder but also allowed the Government to prove the premeditation required for the charged offense, the convening authority approved the sentence but suspended confinement in excess of 20 years for 12 months. The Court of Criminal Appeals affirmed the findings and the approved sentence. We granted review * of the following issues:

### I

WHETHER THE COURT BELOW ERRED IN DETERMINING THAT APPELLANT HAD FAILED TO PRESERVE THE ISSUE REGARDING HIS CHALLENGE FOR CAUSE AGAINST LIEUTENANT COMMANDER (LCDR) HERMAN.

### II

WHETHER THE COURT BELOW ERRED IN HOLDING THAT THE MILITARY JUDGE HAD NOT ABUSED HER DISCRETION IN REFUSING A DEFENSE OFFERED INSTRUCTION TO THE MEMBERS OF PREMEDITATION TAKEN FROM *UNITED STATES V. HOSKINS*, 36 MJ 343 (CMA 1993).

### FACTS—ISSUE I

The *voir dire* of Lieutenant Commander (LCDR) Herman revealed that he had prior

knowledge of the case based on reading accounts in the local papers, as well as operation reports (OPREP) and situation reports (SITREP). LCDR Herman testified that his wife, like the murder victim, was a Filipino. He additionally testified that his wife was very upset when she learned of the death of the victim. Finally, he stated that, as the husband of a Filipino, he was aware of certain stereotypes of individuals who may be married to American servicemembers, *i.e.*, gold-digging.

The judge denied a challenge for cause against LCDR Herman. Defense counsel then used a peremptory challenge, stating:

> ADC: Ma'am, bear with counsel for a second. I would have to refresh my recollection on the rule. The defense is going to peremptorily challenge Lieutenant Commander Herman and I would just like to note that we're doing so because our challenge for cause was denied in this case, just to protect our record.

When disposing of this issue, the Court of Criminal Appeals did not address the propriety of the challenge because it held that defense counsel did not preserve the issue of the challenge by specifying the member he would have peremptorily challenged otherwise. The court below noted:

> From our reading of the defense counsel's statement, it appears that he wanted to preserve the issues he had raised in his unsuccessful challenge for cause against LCDR Herman, but he seems to have been under the impression that he could do so simply by stating that intention when he exercised his peremptory challenge against that same member. As the U.S. Court of Military Appeals ... emphasized in *Jobson* [*infra* ], however, RCM 912(f)(4):
>
> > makes four things clear:
> >
> > [* * *]
> >
> > (2) If ... [the accused] peremptorily challenges the member who he has unsuccessfully attempted to challenge for

---

* Counsel are advised that it is unnecessary to provide the Court with copies of published civilian cases.

cause, *and does not state on the record that he would have used his peremptory challenge on some other member,* he waives his objection.

[* .* *]

(4) ... [The accused] does not waive his objection if he peremptorily challenges the member he has unsuccessfully challenged for cause *and he states on the record that he would have peremptorily challenged another member* if his challenge for cause had been granted. 31 MJ [117] at 120 (emphasis added). It is readily apparent from the defense counsel's statement that he did *not* indicate, in any way, that he would have used his peremptory challenge against any other member....

Unpub. op. at 2.

## DISCUSSION—ISSUE I

We agree with the Court of Criminal Appeals.

■ RCM 912(f)(4), Manual for Courts-Martial, United States (1995 ed.), provides that counsel must state that a peremptory challenge of another member would have been exercised; otherwise any error would be deemed harmless. *Cf. United States v. Jobson,* 31 MJ 117, 120–21 (CMA 1990). Absent specifying the intent to exercise a different peremptory challenge, we are left to assume that counsel was satisfied with the remaining members on the court-martial panel.

There is logic to this rule. If the defense would have challenged another member had the challenge for cause been granted, counsel should so state so an appellate court can consider whether any error prejudiced appellant's substantial rights. Art. 59(a), UCMJ, 10 USC § 859(a). Because no such intent was specified here, appellant's rights were not prejudiced.

■ Because LCDR Herman was removed by peremptory challenge, any possibility of prejudice based on his participation as a member was obviated. Because the defense did not state that they would have

peremptorily challenged another member if the challenge for cause had been granted, they have not shown that they were deprived of anything. They must state that they intended to exercise a right before they can complain of being deprived of it.

## FACTS—ISSUE II

During a session under Article 39(a), UCMJ, 10 USC § 839(a), to consider the instructions, the defense asked for the following additional instruction on premeditated murder:

A murder is not premeditated unless the thought of taking life was consciously conceived and the act or omission by which it was taken was intended. Premeditated murder is murder committed after the formation of a specific intent to kill someone and consideration of the act intended.

The military judge, however, instructed the members as follows:

The term "premeditated design to kill" means the formation of a specific intent to kill and consideration of the act intended to bring about death.

■ The second paragraph of the proposed defense instruction reads as follows:

Having a premeditated design to kill requires that one with a cool mind did, in fact, reflect before killing. It has been suggested that, in order to find premeditation, you must find that AT1 Eby asked himself the question, "Shall I kill her?" The intent to kill aspect of the crime is found in the answer, "Yes, I shall." The deliberation part of the crime requires a thought like, "Wait, what about the consequences? Well, I'll do it anyway." Intent to kill alone is insufficient to sustain a conviction for premeditated murder.

The substance of the first and last sentence of the second paragraph were, in fact, incorporated within the tailored instructions given by the military judge. The military judge advised the members as follows:

The term "premeditated design to kill" means the formation of a specific intent to kill and consideration of the act intended to bring about death. The premeditated

design to kill does not have to exist for any measurable or particular length of time. The only requirement is that it precede the killing. You are further advised that the evidence raises the issue whether the accused acted in the heat of sudden passion. Passion means the degree of rage, pain, or fear which prevents cool reflection .... You may ... consider evidence of the accused's passion in determining whether he possessed sufficient mental capacity to have the premeditated design to kill. An accused cannot be found guilty of premeditated murder if, at the time of the killing, his mind was so confused by anger, rage, or sudden resentment that he could not or did not premeditate.... Thus, if you are convinced beyond a reasonable doubt that sufficient cooling off time had passed between the provocation and the time of the killing which would allow a reasonable person to regain his self control and refrain from killing, you must decide whether he in fact had the premeditated design to kill. If you are not convinced beyond a reasonable doubt that the accused killed with premeditation, you shall, in accordance with his plea, find him guilty of unpremeditated murder.

The military judge correctly declined to adopt the middle portion (2d—4th sentences) of the proposed second paragraph, which is cited in *United States v. Hoskins*, 36 MJ 343, 346 (CMA 1993). The language of the middle portion of the second paragraph of the proposed instruction is taken from W. LaFave and A. Scott, *Substantive Criminal Law* 7.7(a) at 237 n. 6 (1986).

### DISCUSSION—ISSUE II

The defense is not entitled to a requested instruction unless it is correct, necessary, and critical. As we have said:

> While counsel may request specific instructions from the military judge, the judge has substantial discretionary power in deciding on the instructions to give. The test to determine if denial of a requested instruction constitutes error is whether (1) the charge is correct; (2) "it is not substantially covered in the main

charge"; and (3) "it is on such a vital point in the case that the failure to give it deprived defendant of a defense or seriously impaired its effective presentation." We review the military judge's refusal to give the defense-requested instruction ... under an abuse-of-discretion standard of review.

*United States v. Damatta–Olivera*, 37 MJ 474, 478 (1993) (citations omitted).

The dicta in *Hoskins* marshals questions that would be an appropriate vehicle for argument to the factfinders, but it is not a basis for an instruction.

 It is hornbook law that no particular length of time is needed for premeditation, and no specific questions need be asked. *State v. Stewart*, 176 Ohio St. 156, 198 N.E.2d 439, 443 (1964); *State v. Jones*, 217 Neb. 435, 350 N.W.2d 11, 13 (1984). The premeditation must be "consciously conceived" regardless of length of time. There is no legal requirement for the prosecution to establish a certain thought process. However, implicit in the requested instruction is such a requirement, which runs the risk of confusing the jury.

The instructions given by the judge covered both a negative and affirmative definition of premeditation. *See, e.g., United States v. Sechler*, 3 USCMA 363, 370, 12 CMR 119, 126 (1953); *State v. Chavis*, 231 N.C. 307, 56 S.E.2d 678, 681 (1949). Appellant is not required to ask himself any questions, and there is no requirement as to a particular thought process for the formation of a premeditated design to kill. *United States v. Curtis*, 44 MJ 106, 146–49 (1996); *United States v. Loving*, 41 MJ 213, 280 (1994), *aff'd on other grounds*, — U.S. —, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996); *United States v. Teeter*, 16 MJ 68, 71–72 (CMA 1983). Because of the danger of misleading the jury by giving the proposed instruction, we conclude that the judge did not abuse his discretion under the *Damatta–Olivera* test in refusing it.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX, Judges SULLIVAN and GIERKE, and Senior Judge EVERETT concur.